UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JAY BOADWAY, JR.,

                Petitioner,

                                       CASE NO. 2:09-CV-12328

v.                                   HONORABLE AVERN COHN

NICK LUDWICK,

                Respondent.

_____/

## MEMORANDUM AND ORDER DENYING THE PETITION FOR HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254.  Michigan prisoner Robert Jay Boadway, Jr. ("Petitioner") was convicted of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, and two counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c, following a jury trial in the Otsego County Circuit Court.  He was sentenced to concurrent terms of 17½ to 30 years imprisonment and 7 to 15 years imprisonment.  Petitioner raises claims concerning the conduct of the prosecutor, the effectiveness of trial counsel, and the validity of his sentence.  For the reasons that follow, Petitioner's claims do not warrant habeas relief.  According, the petition will be denied.  The Court also will decline to issue a certificate of appealability.

### II. Facts and Procedural History

Petitioner's convictions arise from his sexual misconduct with his stepdaughter at their home in Otsego County, Michigan when she was between 12 and 15 years of age. The victim, who was 18 years old at the time of trial, testified that she was six or seven years old when Petitioner came to live with her, her mother, and her mentally-disabled

brother.  Her mother then married Petitioner and they had two more children before divorcing in October, 2003.  The victim said that did not have a very good relationship with Petitioner.  He was a disciplinarian who spanked her a lot when she was younger and later took "everything away" from her as punishment.

Relative to the sexual assaults, the victim testified that she saw Petitioner smelling her underwear when she put her clothes in the dirty laundry before taking a shower.  He continued to do so even when she kept her underwear in her room or put it downstairs. The victim testified that on one occasion Petitioner wrapped his arms around her, "grabbed her boobs," and touched her "crotch."  He also forced her to have sex with him in his bedroom while her mother was at work and the other children were in bed.  She said that the sexual touching occurred three or more times and that the sexual intercourse occurred 10 or 11 times.  Both began when she was 12 years old and stopped before Petitioner moved out of the home in October, 2003.

The victim also discussed an incident when Petitioner grabbed her and shook her when he was drunk, thereby bruising her arm.  Her cheerleading coach saw the bruise, would not let her go home, and contacted social services.  She told the social worker how she got the bruise and Petitioner got into trouble for it.  She did not report any sexual abuse at that time.  She explained that she was scared of Petitioner and he had threatened to hurt her family.

The victim spoke to a school counselor named Stacey Shafto after her mother and Petitioner divorced.  She told Shafto about Petitioner's physical abuse and, in time, about his sexual abuse.  She also told two friends, Jimmy and Ryan, and her boyfriend, Andrew Peck, about the sexual abuse.  Both Shafto and her boyfriend encouraged her to report the sexual abuse.  Shafto gave her a week to think about it.  The victim went to the police

in January, 2006.  The victim testified that she also told her mother about the sexual abuse once, but her mother thought that she was making it up to get rid of Petitioner. This made her reluctant to report the sexual abuse because she feared that no one else would believe her either.  The victim acknowledged that her relationship with her mother was not very good during that time period because they fought a lot and did not see each other much due to their schedules.  She admitted that she had "honesty issues" with her mother and Petitioner.  She also stated that Petitioner and her mother had problems with alcohol and there was a lot of fighting and tension in their home.

The victim also testified that she had a personal protection order issued against Petitioner in May 2006.  In her petition, she stated that she was seeking the order because she kept seeing Petitioner near her workplace staring at her and because he had sexually assaulted her in the past.  The personal protection order was admitted into evidence.  The victim further testified that she previously obtained another personal protection order against Petitioner shortly after he and her mother divorced because she was scared of him and thought he blamed her for the divorce.

The victim testified that she reported the sexual abuse to Michigan State Police Trooper Bannon.  She gave Bannon a letter that she had written to her boyfriend describing the abuse, and then they spoke about it.  The victim read portions of the letter aloud at trial and the letter was admitted into evidence.  The victim also testified that Petitioner wrote her letters concerning her behavior and her relationship with her mother and did some drawings.  She gave those materials to Trooper Bannon and they were admitted into evidence.

The victim's mother, Leandra Murphy, testified that she and Petitioner were married from 1995 to 2003.  She acknowledged that she and Petitioner fought a lot during

their marriage and had problems with alcohol.  Murphy recalled her daughter complaining about Petitioner, but could not remember specifics or any complaints of sexual abuse.  At the time, Murphy believed that her daughter was trying to break up the marriage.  Murphy testified that she did not spend much time with her daughter when she was between 12 and 15 years of age because she worked nights and her daughter went to school during the day.  She thought that her daughter lied sometimes like a normal teenager.  She remember the slide and toy incidents.  Murphy also testified that she did like how Petitioner disciplined the children.  She explained that he would make them go outside and lock them out of the house, order them to their rooms, and not let them watch television.  She did not notice whether her daughter had stopped eating for a week nor did she observe any cuts on her daughter.  Murphy said that she took her daughter to the doctor or hospital whenever she needed medical attention.  Murphy also discussed her recollections about her daughter's bruised arm and the ensuing investigation.  Although her daughter returned home following that incident, she moved out after Murphy and Petitioner were divorced.

The victim's boyfriend, Andrew Peck, testified that he had known the victim for three years, they had been dating for 11 months, they were engaged, and they had recently moved in together.  Peck testified that the victim told him about her relationship with Petitioner and wrote Peck a letter describing some of the things that had happened.  Peck said that she had a hard time discussing such matters and often cried during those conversations.  She told him that she hated Petitioner because of his controlling nature and physical abuse.  Peck recommended that the victim report the abuse to her counselor and the authorities, and accompanied her to the police station.

The victim's counselor, Stacy Shafto, testified that she began counseling the victim

4

in 2004.  The victim was relieved that her mother and Petitioner were getting a divorce.

The victim reported Petitioner's physical abuse during their early counseling sessions but

did not report the sexual abuse until 2006.  Shafto recommended that the victim report the

abuse to the authorities and gave her a week to think about.  When the victim agreed to

report the abuse, Shafto went with her to the police station.  Shafto had been a counselor

for seven and a half years and had dealt with other sexual abuse cases.  She testified that

it was not uncommon for victims to delay reporting such matters.  Shafto said that the

victim told her that Petitioner was responsible for her bruises, that he had abused

animals, and that he was physically and verbally abusive.  The victim also said that she

did not have a good relationship with her mother.

Michigan State Police Trooper Mary Bannon testified that she took the victim's

complaint on February 7, 2006.  Bannon read the victim's letter to her boyfriend first and

then questioned the victim about her claims of sexual touching and intercourse.  Bannon

also read Petitioner's letters to the victim and viewed his drawings.  Bannon interviewed

Petitioner on March 4, 2006.  He initially denied writing letters to the victim and drawing

her pictures, but admitted writing the letters when confronted with them.  He continued to

deny drawing the pictures.  Petitioner denied any sexual contact with the victim.  He said

that she was a compulsive liar and related incidents of her lying.  Bannon acknowledged

that there was no physical evidence to support the victim's claims of sexual abuse.

Petitioner testified in his own defense at trial.  He said that he got along with his

step-children, but he became the disciplinarian in the household.  He confronted the

victim when she lied and when she was rude to her mother.  He recalled an incident in

which he observed their swing set slide outside the victims' bedroom window.  He and his

ex-wife confronted the victim about it.  She initially denied sneaking out of the house and

5

cried, but eventually admitted it when they tricked her into believing that neighbors saw

her leaving the house.  He also recalled an incident in which the victim lied about taking a

toy from another child.  Petitioner admitted paddling the children a few times, but said that

he eventually stopped doing so and began to take away their electronics instead.  He also

admitted drinking and fighting with his ex-wife.  Petitioner denied smelling the victim's

underwear and denied committing the sexual assaults.  He believed that the victim did not

like being disciplined by him and that she was upset because he was not spending

enough time with his two younger children.

B.

The jury convicted Petitioner of three counts of first-degree criminal sexual conduct

and two counts of second-degree criminal sexual conduct.  As noted above, Petitioner

was subsequently sentenced him to concurrent terms of 17 ½ to 30 years imprisonment

and 7 to 15 years imprisonment on those convictions, respectively.

Following his convictions and sentencing, Petitioner filed an application for leave to

appeal with the Michigan Court of Appeals, which was denied for lack of merit in the

grounds presented.  *People v. Boadway*, No. 281469 (Mich. Ct. App. May 15, 2008)

(unpublished).  Petitioner also filed an application for leave to appeal with the Michigan

Supreme Court, which was denied.  *People v. Boadway*, 482 Mich. 1058, 758 N.W.2d 245

(2008).

### III.  Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect
to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

(1)      resulted in a decision that was contrary to, or involved an

6

> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in
>         the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. The state court's decision must have been more than incorrect or erroneous. It must have been 'objectively unreasonable.' *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S.

Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The

Supreme Court emphasized "that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S.

63, 75 (2003).  Pursuant to § 2254(d), "a habeas court must determine what arguments or

theories supported or . . . could have supported, the state court's decision; and then it

must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the

state court's rejection of his claim "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Id.*

While the requirements of "clearly established law" are to be determined by Supreme

Court precedent, the decisions of lower federal courts may be useful in assessing the

reasonableness of the state court's ruling.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th

Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v.

Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Finally, a state court's factual determinations are presumed correct on federal

habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption

only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61

(6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the

state court."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

### IV.  Analysis

#### A.  Prosecutorial Misconduct Claim

Petitioner first claims that he is entitled to habeas relief because the prosecutor

engaged in misconduct by using false testimony and hearsay of physical abuse to denigrate him and mislead the jury. The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

The Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before a jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner contests the prosecutor's use of allegedly false testimony from the victim, her boyfriend, and her counselor. The Supreme Court has made clear that the

9

"deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

Petitioner makes no such showing. Although the victim's and the witnesses' testimony was certainly material, the record does not demonstrate that they provided false testimony or that the prosecutor purposefully elicited false testimony. Petitioner essentially challenges the credibility of their testimony, but has not shown it to be false. There is no evidence that the prosecution had reason to doubt the testimony of the prosecution witnesses or otherwise knowingly presented false testimony. Petitioner makes several generalized and unsupported allegations in his pleadings. However, conclusory allegations without evidentiary support do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also*

*Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a sufficient basis to hold an evidentiary hearing in habeas proceedings).  Petitioner has failed to establish a violation of his constitutional rights.

Petitioner also asserts that the prosecutor improperly introduced and relied upon alleged hearsay testimony and other acts evidence of physical abuse.  The trial court, however, admitted such testimony.  It is not prosecutorial misconduct for a prosecutor to offer and rely upon evidence which is deemed admissible by the trial court.  *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008); *Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Moore v. Stovall*, No. 06-CV-14824, 2008 WL 2547418, *3 (E.D. Mich. June 20, 2008) (habeas petitioner could not establish that the prosecutor's use of properly admitted testimony constituted misconduct).  Such testimony was relevant to explain the victim's relationship with Petitioner and the dynamics of their household.  The victim's letter and prior statements, the counselor's testimony, and the boyfriend's testimony were also admissible as prior consistent statements of the victim and not hearsay.  *See* MICH. R. EVID. 801(d).  Petitioner has failed to establish that the prosecutor's conduct was improper or that it rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

## B.  Ineffective Assistance of Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged improper testimony, failing to investigate and subpoena witnesses, failing to file a motion to suppress his statements to police, and operating under a conflict of interest.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received

11

the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id.* at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Id.* at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and §

12

2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id.* at 788.

Petitioner first asserts that trial counsel was ineffective for failing to object to the alleged false testimony and hearsay. However, given the trial court's and this Court's determination that such evidence was admissible, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct. Defense counsel cannot be deemed ineffective for failing to make a futile motion or objection. *See, e.g., United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner also asserts that trial counsel was ineffective for failing to investigate and call certain witnesses. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. Decisions as to what evidence to present and whether to call certain witnesses, however, are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial

13

defense.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner alleges that trial counsel was ineffective for failing to call several witnesses, such as the victim's friends and grandparents, and for failing present additional evidence, such as the victim's medical records, which he claims would have established his innocence.  Petitioner, however, has failed to present any witness affidavits, medical records, or other documentation to substantiate his claims.  His speculative and conclusory allegations regarding the content of such testimony and records fail to establish that trial counsel was ineffective, that he was deprived of a substantial defense, or that he is entitled to federal habeas relief.  *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733.

Moreover, the record before the Court indicates that trial counsel extensively cross-examined the victim about her allegations in an effort to discredit her, offered evidence of her previous dishonest behavior and possible motives for her allegations, and presented Petitioner's own testimony in support of his defense and claim of innocence.  Such a strategy was reasonable under the circumstances.  As the Supreme Court has recently stated, "[t]here comes a point where a defense attorney will reasonably decide that a [certain] strategy is in order, thus making particular investigations unnecessary. . . .Those decisions are due a heavy measure of deference."  *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted).  The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective.  *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Petitioner has failed to

14

establish that trial counsel was ineffective in this regard.

Petitioner also asserts that trial counsel was ineffective for failing to seek suppression of his statements to police.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial unless the defendant has voluntarily and knowingly waived certain rights prior to making those statements.  A defendant's waiver of his *Miranda* rights must be found, under the totality of the circumstances, to be voluntary, knowing, and intelligent.  *See Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions.  *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986).  A confession is considered involuntary if:  (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question."  *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).  In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution."  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  Those circumstances include: (1) police coercion (a "crucial element"), (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition, and (8) whether the suspect was advised of Miranda rights.  *See Withrow v.  Williams*, 507 U.S. 680, 693-94 (1993).  All of the factors should be closely scrutinized, *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961), but without coercive police activity, a confession should not be deemed involuntary.  *Connelly,* 479 U.S. at 167 ("coercive police activity is

a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").  The burden of proving that a statement was involuntary rests with the petitioner.  *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987).

In this case, Petitioner has failed to establish that his statements to Trooper Bannon were obtained in violation of his *Miranda* rights or were otherwise involuntary.  He has offered no evidence to show that he was not advised of his rights and/or did not voluntarily waive those rights, that he was in custody when he made his statements, that he was coerced, or that any of the surrounding circumstances rendered his statements involuntary.  His conclusory allegations are insufficient to demonstrate that his statements should have been suppressed.  Consequently, Petitioner cannot establish that defense counsel erred in failing to seek suppression of those statements.  As noted, counsel cannot be deemed deficient for failing to make a futile or meritless motion.  *Steverson*, 230 F.3d at 225.  Moreover, Petitioner has not shown that he was prejudiced by counsel's conduct.  Petitioner's statements to Trooper Bannon were not inculpatory as to the charged offenses.  Rather, Petitioner denied committing the sexual assaults and said that the victim was a compulsive liar.  Such statements did not implicate him in any wrongdoing and were consistent with his defense at trial.

Lastly, Petitioner asserts that trial counsel had a conflict of interest because he told the jury that he was good friends with the prosecutor.  A criminal defendant is entitled to the effective assistance of counsel free from conflict.  *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978).  The Court notes, however, that it is not unusual for opposing attorneys to have friendly relationships outside of the courtroom, particularly in a small legal community.  Without more, such a friendship does not state a colorable claim of a conflict of interest on the part of defense counsel.  *See, e.g., Howard v. United States*,

16

Nos. 05-12-P-H, 07-27-P-H, 2007 WL 1810709, *16 (D. Maine June 21, 2007) (banter

between defense counsel and prosecutor did not raise tenable conflict of interest claim);

*Snyder v. United States*, Nos. 2:06-CV-348, 2:05-CR-60, 2007 WL 1231780, *6 (S.D.

Ohio April 25, 2007) (adopting magistrate judge's recommendation and denying relief on

similar claim).  Petitioner has offered no facts which show that trial counsel had a

personal interest at stake or maintained such a close friendship with the prosecutor that

his client loyalty could be called into question.  Petitioner has failed to establish that

counsel had a conflict of interest or was otherwise ineffective.  Habeas relief is not

warranted on such a basis.

### C.  Sentencing Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court

erred in scoring his sentencing guidelines and imposing costs, his sentence was imposed

in violation of his Sixth Amendment rights, and his sentence is disproportionate and

constitutes cruel and unusual punishment under the Eighth Amendment.

As an initial matter, Petitioner's sentences are within the statutory maximums.  *See*

MICH. COMP. LAWS §§ 750.520b, 750.520c.  A sentence within the statutory limit is

generally not subject to federal habeas review.  *See Townsend v. Burke*, 334 U.S. 736,

741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  Claims which

arise out of a state court's sentencing decision are not normally cognizable upon habeas

review, unless the petitioner can show that the sentence imposed exceeded the statutory

limits or is wholly unauthorized by law.  *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745

(E.D. Mich. 2001).  Petitioner makes no such allegation.

Petitioner asserts that the trial court erred in scoring his sentencing guidelines and

imposing costs.  Any claim that the trial court erred in scoring offense variables under the

state sentencing guidelines is not cognizable on federal habeas review because it is a state law claim. *Austin v. Jackson*, 231 F.3d 298, 302 (6th Cir. 2000); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Haskell v. Berghuis*, 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Similarly, Petitioner's challenge to the trial court's imposition of costs is not a cognizable claim upon habeas review. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement of 28 U.S.C. § 2255); *see also Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (ruling that continuing liability under a restitution order is similar to a "fine-only" conviction, and is not a serious restraint on liberty so as to warrant habeas relief and citing *Tinder v. Paula*, 725 F.2d 801, 805 (1st Cir. 1984)); *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008) (restitution order included in California sentence could not be challenged under federal habeas statute because restitution does not affect duration of custody).

Petitioner also cannot prevail on any claim that his sentence was based upon inaccurate information. A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *See Townsend*, 334 U.S. at 741; *see also*

18

*United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, a petitioner must show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe*, 803 F. Supp. 70, 81 (E.D. Mich. 1992). Petitioner makes no such showing. The state trial court considered the nature of the crime, the pre-sentence report, and other permissible factors at sentencing. Petitioner had an opportunity to contest the accuracy of the reports and the scoring of the guidelines. Petitioner has not shown that the trial court relied upon materially false or inaccurate information in imposing his sentence which he had no opportunity to correct. He is not entitled to relief on this claim.

Petitioner also asserts that the trial court erred by relying upon facts neither admitted by him nor proven beyond a reasonable doubt in imposing his sentence. This claim lacks merit. The Supreme Court cases relevant to this issue, such as *Blakely v. Washington*, 542 U.S. 296 (2004), do not apply to Michigan's intermediate sentencing scheme. The United States Court of Appeals for the Sixth Circuit has held that Michigan's sentencing guidelines do not violate the Sixth Amendment because they set a minimum sentence range while the maximum is set by statute. *See Montes v. Trombley*, 599 F.3d 490, 494–98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009); *see also People v. Drohan*, 475 Mich. 140, 160–61, 715 N.W.2d 778 (Mich. 2006). This Court is bound by the Sixth Circuit's decisions. Because Petitioner's sentences are within the statutory maximum penalties, which were not enhanced by judicial fact-finding, no Sixth Amendment or due process violation occurred.

Lastly, Petitioner asserts that his sentence is disproportionate and constitutes cruel

and unusual punishment.  To the extent that Petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief.  *See Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  Moreover, there is no federal constitutional right to individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner is also not entitled to relief on his claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (internal citation omitted).  Petitioner's sentences are within the statutory maximums for his offenses.  The state trial court thus acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment.  Habeas relief is not warranted.

### V.  Conclusion

For the reasons stated above, the state courts' denials of relief are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Petitioner is not entitled to habeas relief on the claims contained in his petition.  Accordingly, the petition is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28

20

U.S.C. § 2253(c)(2). [1] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**SO ORDERED**.

 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  October 27, 2011

I hereby certify that a copy of the foregoing document was mailed to Robert Boadway 622394, St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880 and the attorneys of record on this date, October 27, 2011, by electronic and/or ordinary mail.

 S/Julie Owens
Case Manager, (313) 234-5160

---

[1]  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

21